IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

BILLY TOM MOORE,                                    CV. 07-1805-HU

            Petitioner,              FINDINGS AND RECOMMENDATION

      v.

DON MILLS, Superintendent,
Eastern Oregon Correctional
Institution,

            Respondent.

      Amy Baggio
      Assistant Federal Public Defender
      101 S.W. Main Street, Suite 1700
      Portland, Oregon 97204

            Attorney for Petitioner

      John R. Kroger
      Attorney General
      Jacqueline Kamins
      Assistant Attorney General
      Department of Justice
      1162 Court Street N.E.
      Salem, Oregon 97301-4700

            Attorneys for Respondent

HUBEL, Magistrate Judge

Petitioner, an inmate at the Eastern Oregon Correctional Institution, brings this habeas corpus proceeding pursuant to 28 U.S.C. § 2254.  For the reasons set forth below, petitioner's habeas petition should be denied.

## BACKGROUND

On August 4, 1998, petitioner telephoned his 24-year-old niece, "A.W.", and during the course of the conversation shot himself in the stomach.  The police investigated petitioner's apparent suicide attempt, and interviewed A.W.

A.W. disclosed to police that petitioner had forced her to have sex with him beginning when she was fourteen years of age, and that she had recently left her uncle's home to live with her boyfriend.  Petitioner was trying to convince A.W. to return when he shot himself in the stomach.

On September 10, 1998, petitioner was indicted for the rape, sodomy, and sexual abuse of A.W.  The indictment charged petitioner with crimes occurring between July 1, 1995, to June 30, 1998.  At trial, A.W. testified that she was placed in petitioner's home by the state in August, 1988, when she was fourteen.  Trial TR at 60. A.W. testified that petitioner began sexually abusing her within two weeks of her placement, and the sexual abuse continued over the next five years approximately three to five times per week.  Id. at 59, 62-67, 73-74, 131 & 197-98.  A.W. testified that during those first five years, petitioner would force her to have sex by using

2 -- FINDINGS AND RECOMMENDATION

physical violence and threats toward her; and by threatening to harm his infant daughter (Christina), for whom A.W. was responsible. Id. at 68, 73-75,87-89 & 93-94.

A.W. testified that after her eighteenth birthday, the violence and sexual abuse continued and petitioner threatened to kill himself and others if A.W. left him. Id. at 97-103. She testified that by the summer of 1995, when she was 21 years of age, petitioner continued to force her to have sex with him multiple times per week. Id. at 103, 105-12. In his defense, petitioner testified that he did not have sexual relations with A.W. until August, 1996; that sex with A.W. was consensual; that she acted as though she loved him; and that he and A.W. were "soul mates". Id. at 585-87, 592-94 & 600.

At the conclusion of the trial, the jury returned a guilty verdict of Rape in the First Degree, Sodomy in the First Degree (two counts), and Sex Abuse in the Second Degree (five counts). Petitioner subsequently filed a direct appeal, by means of a Balfour brief[1] and *pro se* supplemental brief, raising five

---

[1] A Balfour brief refers to the Oregon Supreme Court's holding in State v. Balfour, 311 Or. 434, 814 P.2d 1069 (1991), wherein the court held that when an appellate attorney is unable to identify any meritorious issues for direct appeal, he or she may submit an appellate brief in two sections - Section A which contains a statement of the case and is signed by the attorney; and Section B which presents the issues that the defendant seeks to raise and is signed by the defendant. Farmer v. Baldwin, 346 Or. 67, 70 n.2, 205 P.3d 871 (2009).

assignments of error.  The Oregon Court of Appeals affirmed without opinion, and the Oregon Supreme Court denied review.  <u>State v. Moore</u>, 205 Or. App. 569, 135 P.3d 859, <u>rev. denied</u>, 341 Or. 367 (2006).  Petitioner did not seek state post-conviction relief.

In the instant proceeding, petitioner raises the following four grounds for relief: (1) denial of right to speedy trial; (2) insufficiency of the evidence; (3) denial of due process (based upon improper contact with juror); and (4) Oregon's Balfour System violates petitioner's Sixth Amendment right to counsel.[2] Respondent moves the court to deny habeas relief on the basis that petitioner's due process claim is procedurally defaulted, the *evidence* of prejudice supporting petitioner's speedy trial claim is procedurally defaulted, and the state courts' rejection of petitioner's claims is entitled to deference.

## DISCUSSION

**I.   Improper Jury Contact - Procedural Default**.

At the beginning of the second day of trial, defense counsel advised the court that a district attorney's office employee had gone into the jury room and conversed with an alternate juror whom she knew.  Trial TR at 160-62.  Defense counsel declined the judge's invitation to have the employee questioned about the

_____

[2] Petitioner alleged ten grounds for relief in his *pro se* petition.  However, in his supporting brief filed with the assistance of counsel, petitioner withdrew six of the ten grounds.  Pet.'s Supporting Memo. at 2.

contact, declined the prosecution's offer to have the alternate juror removed from the jury, and indicated that he "would be satisfied if someone from the District Attorney's office would talk to her" about the impropriety of her conduct.  Id. at 162-65; see also Trial TR at 290-91.

Petitioner alleges that the trial court erred in failing to grant a mistrial *sua sponte* upon learning of the contact between the employee and the alternate juror.  Petitioner argues that the failure to do so violates the Sixth Amendment, and the Supreme Court's decisions in Remmer v. United States, 347 U.S. 227 (1954), and Gold v. United States, 352 U.S. 985 (1957).  Respondent moves the court to deny this ground for relief on the basis that it was not preserved at the trial court level and, therefore, not fairly presented to the Oregon Court of Appeals.

Generally, a state prisoner must exhaust all available state court remedies either on direct appeal or through collateral proceedings before a federal court may consider granting habeas corpus relief.  28 U.S.C. § 2254(b)(1).  A state prisoner satisfies the exhaustion requirement by fairly presenting his claim to the appropriate state courts at all appellate stages afforded under state law.  Baldwin v. Reese, 541 U.S. 27, 29 (2004); see also Casey v. Moore, 386 F.3d 896, 915-16 & n.18 (9th Cir. 2004), cert. denied, 545 U.S. 1146 (2005).

Raising a claim "for the first and only time in a procedural context in which its merits will not be considered unless there are special and important reasons" does not constitute a fair presentation. Castille v. Peoples, 489 U.S. 346, 351 (1989) (internal quotations omitted); but see Casey, 386 F.3d at 918 n. 23 (noting that a claim *is* exhausted *if* the state appellate court expressly addresses the claim, whether or not it was fairly presented).

When a state prisoner fails to exhaust his federal claims in state court, and the state court would now find the claims barred under applicable state rules, the federal claims are procedurally defaulted. Casey, 386 F.3d at 920; Coleman v. Thompson, 501 U.S. 722, 735 n.1 (1991). Habeas review of procedurally defaulted claims is barred unless the petitioner demonstrates cause for the procedural default and actual prejudice, or that the failure to consider the claims will result in a miscarriage of justice. Smith v. Baldwin, 510 F.3d 1127, 1139 (9th Cir. 2007), cert. denied, 129 S.Ct. 37 (2008); Coleman, 501 U.S. at 750.

In the instant proceeding, it is uncontested that petitioner's trial counsel raised no objection when it was discovered that an employee of the district attorney's office had an *ex parte* contact with a juror. Although no objection was preserved, petitioner raised the claim in his *pro se* brief to the Oregon Court of Appeals. Resp. Exh. 102 at 8 & 45-48. The Oregon Court of Appeals

6 -- FINDINGS AND RECOMMENDATION

affirmed without opinion, and the Oregon Supreme Court denied review.

Under Oregon law, "[n]o matter claimed as error will be considered on appeal unless the claim of error was preserved in the lower court . . . provided that the appellate court may consider an error of law apparent on the face of the record." Oregon Rule of Appellate Procedure 5.45(1). Determining whether to review an unpreserved error involves a two-step process. State v. Ramirez, 343 Or. 505, 511-12, 173 P.3d 817 (2007), adh'd to as modified on recons., 344 Or. 195 (2008); State v. Gornick, 340 Or. 160, 166, 130 P.3d 780 (2006).

First, the appellate court must determine whether the error (1) is one "of law"; (2) is obvious and not reasonably in dispute; and (3) appears on the face of the record, i.e., the reviewing court need not go outside the record to identify the error or choose between competing inferences. Ailes v. Portland Meadows, Inc., 312 Or. 376, 381-82, 823 P.2d 956 (1991); Gornick, 340 Or. at 166-67.

Second, the state court must decide whether to exercise its discretion to consider the claim, taking into account "the competing interests of the parties; the nature of the case; the gravity of the error; the ends of justice in the particular case; how the error came to the court's attention; and whether the policies behind the general rule requiring preservation of error

have been served in the case in another way." <u>Ailes</u>, 312 Or. at 382 n. 6; <u>State v. Fults</u>, 343 Or. 515, 522, 173 P.3d 822 (2007); <u>see also</u> <u>Ramirez</u>, 343 Or. at 513-14 (appellate court considering whether to address unpreserved error must consider whether to do so would advance the ends of justice).   "'It is only in rare and exceptional cases that [an Oregon appellate] court will notice an alleged error where no ruling has been sought from the trial judge.'"   <u>Gornick</u>, 340 Or. at 166 (quoting <u>Hotelling v. Walther</u>, 174 Or. 381, 385-86, 148 P.2d 933 (1944)).

Petitioner's claim of improper jury contact is not an error of law apparent on the face of the record.   Indeed, petitioner concedes that the content of the communication between the juror and county employee is unknown[3] and, therefore, would require development of the record.   Moreover, because review of a plain error under Oregon law is discretionary and warranted only in rare and exceptional cases upon a satisfactory showing of multiple factors, petitioner's claim was not "fairly presented" for purposes of the exhaustion requirement.   <u>See</u> <u>Castille</u>, 489 U.S. at 351; <u>Casey</u>, 386 F.3d at 917-18.   Because petitioner can no longer raise this claim in state court, the claim is procedurally defaulted. <u>See</u> O.R.S. 138.550(2) & (3); 138.071(1) & 138.510(3).

_____

[3] Pet.'s Supporting Memo. at 12 n.5.

Petitioner's contention that "[w]here, as here, the state court did not clearly and expressly invoke a procedural default rule, there is no independent and adequate ground to preclude federal collateral review", confuses the rules governing procedural default.  Petitioner's claim is procedurally defaulted, not by virtue of the state appellate courts' invocation of an independent and adequate state rule, but due to the fact that (1) he failed to fairly present the federal constitutional claim on direct appeal; (2) the appellate court did not expressly address the claim; and (3) the claim is now procedurally defaulted by virtue of the fact that the time for fairly presenting it to the state courts has expired.  <u>See</u> <u>Coleman</u>, 501 U.S. at 735 n.1; <u>Casey</u>, 386 F.3d at 918-21 & n.23.

Petitioner has made no showing of cause and prejudice to excuse his procedural default, nor has he demonstrated that the failure to consider this ground for relief will result in a fundamental miscarriage of justice.  Accordingly, habeas relief is precluded as to this ground.

**II.  <u>Speedy Trial</u>.**

Petitioner alleges that he was denied the right to a speedy trial because his trial did not begin until one year, four months, and ten days, after his arraignment.  Petitioner contends that the state court's rejection of this claim was based upon an unreasonable finding that petitioner was at fault for the delays.

Respondent contends that the state court's rejection of this claim is neither contrary to, nor an unreasonable application of clearly established federal law.  Additionally, respondent contends that because petitioner presented evidence to the Oregon Court of Appeals, which was not presented to the trial court, the "*evidence* in support of Ground Two is procedurally defaulted, and cannot be reviewed by this court."  Resp. Response at 5 (emphasis added).

**A.   *Evidentiary* Procedural Default.**

The exhaustion requirement of 28 U.S.C. § 2254, requires that a habeas petitioner describe in the state court proceedings both the operative facts and the federal legal theory on which his claim is based so as to give the state courts a full and fair opportunity to apply the controlling legal principles to the facts bearing upon his constitutional claim.  Davis v. Silva, 511 F.3d 1005, 1009 (9th Cir. 2008).  Exhaustion does not require that a habeas petitioner present every piece of evidence in support of his federal claim, it is sufficient that he present all of the facts necessary to give application to the constitutional principles upon which he relies. Id.

Relying upon Coleman v. Thompson, 501 U.S. 722, 733 (1991), and Keeney v. Tomayo-Reyes, 504 U.S. 1, 9 (1992), respondent argues that petitioner's *evidence* in support of his speedy trial claim is procedurally defaulted because he failed to present the evidence of

prejudice to the state trial court in the first instance.[4]    In other words, respondent does not argue that petitioner's *constitutional claim* is procedurally defaulted due to a lack of fair presentation, but rather that petitioner's "*evidence* in support of Ground Two is procedurally defaulted, and cannot be reviewed by this court."  Respondent's Response at 6 & 11 (emphasis added).

Neither <u>Coleman</u> nor <u>Keeney</u>, stand for the proposition that evidence, rather than a constitutional issue, may be procedurally defaulted.  Rather, in <u>Keeney</u>, the Court held that a petitioner is not entitled to a *federal evidentiary hearing* to develop new facts unless he shows cause and prejudice for failing to adequately develop the factual record in the state proceeding.  504 U.S. at 11; <u>see also</u> 28 U.S.C. § 2254(e)(2) (codifying the necessary showing for evidentiary hearing).  In <u>Coleman</u>, the Court addressed the procedural default of constitutional claims under the independent and adequate state rule doctrine.  Neither case stands for the proposition that a petitioner may procedurally default supporting evidence.

_____

[4] In his supporting brief, petitioner "concedes" that he presented factual information to the court of appeals distinct from that presented to the trial court.  However, it is worthy of note that in both courts he made reference to the death and unavailability of defense witnesses.  See Pet.'s Supp. Exh. 6A (Petitioner's Affidavit at 5); Resp.'s Exh. 102 at 17 & App 2.

In the instant proceeding, (1) petitioner is not seeking an evidentiary hearing or to expand the record under Rule 7 of the Rules Governing Habeas Corpus Proceedings; and (2) respondent does not contend that petitioner procedurally defaulted his speedy trial *claim* by failing to present the operative facts to the state courts. Accordingly, I reject respondent's assertion that this court may not consider the *evidence* submitted by petitioner to the Oregon Court of Appeals in support of his speedy trial claim.

**B.    The Merits.**

The Sixth Amendment guarantees that in all criminal prosecutions, the accused shall enjoy the right to a speedy trial. Vermont v. Brillon, 129 S.Ct. 1283, 1290 (2009); Barker v. Wingo, 407 U.S. 514, 515 (1972). The Supreme Court has established a four-part balancing test for determining whether the right to a speedy trial has been violated, requiring a reviewing court to consider (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right, and (4) any prejudice to the defendant. Vermont, 129 S.Ct. at 1290; Barker, 407 U.S. at 530; McNeely v. Blanas, 336 F.3d 822, 826 (9th Cir. 2003). The delay in this case lasted over one year, and respondent concedes that such a delay is presumptively prejudicial, which triggers an inquiry into the remaining three Barker factors. See Doggett v. United States, 505 U.S. 647, 652 & n.1 (1992); McNeely, 336 F.3d at 826.

• **The Reason for the Delay**

Petitioner divides the pretrial delay into four periods of time for which he contends the state is at fault: (1) September 11, 1998, to March 8, 1999; (2) March 8, 1999, to August 30, 1999; (3) August 30, 1999, to December 6, 1999; and (4) December 6, 1999, to January 24, 2000. Petitioner alleges the reason for the delay between his arraignment and the first trial date of March 8, 1999, was trial counsel's lack of preparation, and the state's failure to abide by trial court rules regarding timeliness of plea offers. Petitioner alleges that he subsequently was tricked into consenting to a mental evaluation, thereby causing the second period of delay. Petitioner contends that the third period of delay was caused by defense counsel's failure to prepare, and by the filing of a superseding indictment; and that the final period is attributable to the trial court itself.

The record reveals that petitioner was arraigned on September 14, 1998, a trial date was set for October 16, 1998, and defense counsel filed a waiver of the 60-day rule and request for continuance. Pet.'s Exh. 7. The trial date was reset to March 8, 1999, plea negotiations ensued and, on March 4, 1999, the parties entered into a plea agreement. The trial date was converted to a plea hearing. On March 8, 1999, however, petitioner advised the court he no longer wished to plead guilty. The trial judge indicated that the trial date had been filled with other matters

and would have to be reset.  Consequently, the trial was reset to May 19, 1999.  3/8/99 Hearing TR at 4-10.

On March 31, 1999, trial counsel filed a motion to withdraw, and a hearing was held the following day.  At the hearing, defense counsel informed the judge that petitioner would not take his advice, lies to him, threatened suicide, and was attempting to get personal information about defense counsel's legal secretary.  4/1/99 Hearing TR at 3-5, 27, 31 & 42.  Defense counsel mentioned at the hearing that petitioner had made a *pro se* speedy trial motion.  Id. at 9.

The trial court deferred ruling on counsel's motion to withdraw, and ordered petitioner to undergo a mental health examination at the Oregon State Hospital (OSH) to determine petitioner's competency.  Defense counsel and the prosecution stipulated to the mental examination, and defendant consented with full knowledge that it would delay the trial.  Id. at 6, 30-37.  The trial date was reset to August 30, 1999.  Pet.'s Exh. 7.

The mental evaluation was completed on or about June 21, 1999.  Petitioner was diagnosed as suffering from a character disorder, but no mental disease or defect.  On July 19, 1999, a hearing was held and the trial court addressed the report from the OSH indicating that petitioner was able to aid and assist.  Defense counsel was allowed to withdraw and new counsel was appointed.  7/19/99 Hearing TR at 6.  Petitioner subsequently raised a *pro se*

14 -- FINDINGS AND RECOMMENDATION

motion to dismiss for violation of rights under unidentified statutory and constitutional provisions, but the trial judge advised him to file any motions with the assistance of counsel. Id. at 9-10.

Shortly thereafter, newly-appointed defense counsel filed a motion for continuance. On August 11, 1999, petitioner wrote the court objecting to the continuance. The motion was granted and the trial date was reset to December 6, 1999. On December 3, 1999, an omnibus hearing was held at which petitioner was arraigned on a superseding indictment. Additionally, petitioner filed a *pro se* motion to dismiss for violation of his right to speedy trial. Pet.'s Supp. Exh. 6A. The trial court denied the *pro se* motion on the basis that petitioner was the cause of the delay, and reset the trial date to January 24, 2000. 12/3/99 Hearing TR at 7-15, 19-23. Petitioner's trial proceeded on that date.

In sum, the record reveals that the majority of the pretrial delay is attributable to petitioner's initial, express waiver of his right to speedy trial; defense counsels' requests for continuances; petitioner's last minute rejection of a negotiated plea and refusal to cooperate with counsel; and petitioner's agreement to a competency evaluation. "[D]elay attributable to the defendant's own acts or to tactical decisions by defense counsel [does] not bolster defendant's speedy trial argument." McNeely, 336 F.3d at 827; Vermont, 129 S.Ct. at 1290-92. The delay

attributable to the government (by resetting the trial date from December 6, 1999, to January 24, 2000), does not tip this factor in petitioner's favor.

• **Petitioner's Assertion of his Right.**

Although petitioner repeatedly asserted his right to a speedy trial, he undermined this assertion by failing to cooperate with counsel (including threats of suicide and requesting inappropriate personal information about the lawyer's secretary); accepting and then rejecting the negotiated plea; and consenting to a competency examination. Accordingly, the third <u>Barker</u> factor weighs against petitioner. <u>See</u> <u>United States v. Loud Hawk</u>, 474 U.S. 302, 314-15 (1986) (defendant's assertion of right to speedy trial must be viewed in the light of the defendant's other conduct).

• **Prejudice to Petitioner**

Because the government was reasonably diligent in pursuing petitioner's prosecution, petitioner must show specific prejudice to his defense under the final <u>Barker</u> factor. <u>Doggett</u>, 505 U.S. at 656. Actual prejudice may be shown in three ways: (1) oppressive pretrial incarceration, (2) anxiety and concern of the accused; and (3) the possibility that the accused's defense was impaired. <u>Doggett</u>, 505 U.S. at 653; <u>Barker</u>, 407 U.S. at 532.

Petitioner contends that proof of actual prejudice lies in the fact that (1) he suffered anxiety and concern during the delay as

evidenced by his referral to the OSH; (2) petitioner's father and half brother (a potential witness) died during the delay; and (3) petitioner's wife was not available for trial due to an infirmity.

As outlined above, the state record reveals that petitioner initially was taken into custody after he shot himself in the stomach, and he was referred to the OSH early in his pretrial incarceration due to his failure to cooperate with counsel, inappropriate interest in trial counsel's legal secretary, and suicide attempts. He subsequently was diagnosed with a character disorder. There is no evidentiary support for the conclusion that petitioner's erratic behavior was caused by his incarceration. The death of petitioner's father during petitioner's pretrial incarceration undoubtedly caused anxiety, but this fact is not sufficient to tip this factor in petitioner's favor.

Further, although it is undisputed that petitioner's half brother died during petitioner's pretrial incarceration, petitioner has failed to adequately demonstrate the specific damage to his defense caused by his half brother's death. See Loud Hawk, 474 U.S. at 315 (noting with respect to missing witnesses, possibility of prejudice is not sufficient to support violation). Petitioner's general assertion that the death resulted in the "loss of important testimony," and petitioner's written statement purportedly setting forth the substance of the lost testimony (Resp. Exh. 102, App. 2),

17 -- FINDINGS AND RECOMMENDATION

is mere speculation.  Perhaps more importantly, petitioner's half brother died on November 20, 1998 (Resp. Exh. 102 at 17), just two months after petitioner's arrest, and during the initial delay of trial clearly attributable to petitioner's counsel's request to postpone the trial date.

Finally, petitioner's contention that trial delay resulted in his wife, Tammy Moore, being unable to testify at the trial, is belied by the trial court record indicating that defense counsel did not object to her appearing by telephone if called by the prosecution, and defense counsel did not intend to call her as a defense witness.  Trial TR at 168, 280-84, 522.

In sum, petitioner has failed to demonstrate actual prejudice to his defense.  Accordingly, the state courts' rejection of his speedy trial claim was not an unreasonable application of clearly established federal law, nor was it based upon an unreasonable determination of the facts.  Habeas relief is not warranted.  <u>See</u> 28 U.S.C. § 2254(d)(1) & (2).

### III. <u>Sufficiency of the Evidence</u>.

At the conclusion of the trial, defense counsel moved for a judgment of acquittal on all counts on the basis that the state did not prove that any of the incidents occurred between July 1, 1995, to June 30, 1998, as alleged in the superseding indictment.  In denying the motion, the trial court expressed agreement with the prosecution's position:

MS. BURCART:   Your Honor, based purely on the
testimony of the victim, if none other, she has testified
that from two-two [sic] weeks after she was placed with
the Defendant, up until she left, a week before she left
the home with Mr. Waldo, the Defendant would regularly
have sex with her.  She has designated the particular
frequencies with them, and with what we call regular sex,
it was frequency of three to five times a week right up
until the end of the designated period in the Indictment,
which is June 30, 1998.  The frequency of the oral and
anal sex was much less, (inaudible) saying once every six
months.  But we have a three-year period here, Your
Honor, in which she has testified both to non-consensual
sex very frequently and to instances of forced anal and
oral sex and forced regular sex, I absolutely hate
calling it that, but regular sex under the threat of harm
to herself and to Christina, which she has testified she
felt was real and carried on through until the day she
left.

THE COURT: Okay.  I think there's enough-enough
evidence in there, and if, even just from the-from the
mouth of [A.W.], to keep me from granting a judgment of
acquittal.

Trial TR at 527-28.

In the instant proceeding, petitioner contends that his
convictions were based upon insufficient evidence due to the
prosecution's failure to offer specific proof of the exact dates of
each alleged sex crime.  In this regard, petitioner contends that
Oregon law provides that "when a defendant faces multiple counts of
rape, each of which is alleged by a date range, after the first
count is demonstrated, the state must offer specific proof of exact
dates for each subsequent count."  Pet.'s Supporting Memo. at 10
(citing State v. Pace, 187 Or. 498, 505-06, 212 P.2d 755 (1949)).

A federal habeas court may review a claim that the evidence adduced at a state trial was not sufficient to convict a criminal defendant beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 321 (1979). The relevant question is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson, 443 U.S. at 319-20 (emphasis in original); Schad v. Ryan, 595 F.3d 907, 916 (9th Cir. 2010); Briceno v. Scribner, 555 F.3d 1069, 1078 (9th Cir. 2009). This "standard must be applied with explicit reference to the substantive elements of the criminal offense as defined by state law." Jackson, 443 U.S. at 324 n.16; Juan H. v. Allen, 408 F.3d 1262, 1275 (9th Cir. 2005), cert. denied, 546 U.S. 1137 (2006).

Petitioner's sufficiency of the evidence claim is premised upon an erroneous interpretation of Oregon law. It is well settled that *time* is not a material element of rape or sexual abuse, and that the prosecution need not prove that the crime was committed on a date certain. State v. Milbradt, 305 Or. 621, 632, 756 P.2d 620 (1988); State v. Howard, 214 Or. 611, 616, 331 P.2d 1116 (1958); O.R.S. 135.717. The case relied upon by petitioner, State v. Pace, simply held that when the prosecution charges a defendant with a single sex crime on or about a given date, and there is evidence tending to show more than one similar act, the prosecution must show that the charged crime was committed on or about that date.

187 Or. at 506.   The factual scenario giving rise to the decision in Pace has no application here.

Based on the foregoing, petitioner has failed to demonstrate that no rational trier of fact could have found the essential elements of his crimes beyond a reasonable doubt.  Accordingly, the state courts' rejection of this claim is neither contrary to, nor an unreasonable application of, clearly established federal law.

IV.  **Oregon's Balfour System**.

Petitioner alleges that his appellate counsel acted as "an agent of the government" under Oregon's Balfour system thereby violating his First, Sixth, and Fourteenth Amendment rights. Petition (#2) at 6.   In support of this ground for relief, petitioner "concedes that in litigating the constitutionality of *Balfour* [on appeal], his focus was on what he believed to be a wholly absent second tier of review" which "he now recognizes that Oregon Rule of Appellate Procedure 5.90 requires."   Pet.'s Supporting Memo. at 13.

However, he now contends that Oregon's Balfour system is unconstitutional, "at least as applied to [him]", because appellate counsel and the Oregon Court of Appeals erred in concluding that there were no non-frivolous issues for appeal.   According to petitioner, the failures of the Balfour review process are evidenced by the fact that neither appointed counsel, nor the Oregon Court of Appeals identified the non-frivolous errors raised

21 -- FINDINGS AND RECOMMENDATION

by petitioner in this proceeding, and/or the plain error made by the prosecutor in closing argument when she referred to "inculpatory, disgusting evidence beyond that presented at trial and of which she alleged to have knowledge." Pet. Supporting Memo. at 15; Pet.'s Reply at 2.

In order to properly resolve this ground for relief, it is necessary to carefully consider what petitioner is, and is not, arguing. Petitioner concedes in his briefing to this court that Oregon's Balfour system provides for a "second tier of review" (one by appointed counsel and a second independent review by the appellate court itself) which complies with Supreme Court's holdings in Anders v. California, 386 U.S. 738 (1967), and Smith v. Robbins, 528 U.S. 259 (2000). In other words, he is not alleging that Oregon's Balfour systems lacks the minimum safeguards to make the appellate process "adequate and effective". See Robbins, 528 U.S. at 276 (due process and equal protection require that state's appellate procedure provide adequate and effective appellate review to indigent defendants). Rather, petitioner is arguing that the legal determination, that there were no arguably meritorious issues for appeal in his particular case, was the product of incorrect professional judgment by appellate counsel and/or the Oregon Court of Appeals.

So construed, the proper resolution of this ground for relief becomes apparent. First, to the extent that petitioner complains

that appellate counsel failed to recognize non-frivolous issues for appeal, he is raising an ineffective assistance of appellate counsel claim (see Smith, 528 U.S. at 285-88), which was not exhausted in a state post-conviction proceeding and is now procedurally defaulted.  Consequently, the claim cannot be raised here.  Casey, 386 F.3d at 920; Coleman, 501 U.S. at 750.

To the extent that petitioner complains that the Oregon Court of Appeals erred in failing to recognize arguably meritorious issues for appeal, based upon its review of the record (see Or. R. App. P. 5.90(3)), petitioner has not identified a constitutional violation and, therefore, is not entitled to habeas relief. Estelle v. McGuire, 502 U.S. 62, 67-68 (1991); see also Allah v. Superior Court of State of Cal., Los Angeles Cty., 871 F.2d 887, 890 (9th Cir. 1989) (federal court lacks jurisdiction over direct challenges to final decisions of state courts).  In sum, in the absence of a claim identifying how Oregon's Balfour's system violates the constitution or laws of the United States, habeas relief is not warranted.

## CONCLUSION

Based on the foregoing, petitioner's petition for writ of habeas corpus (#2) should be denied, and this proceeding should be dismissed, with prejudice.  Because petitioner has not made a substantial showing of the denial of a constitutional right, a certificate of appealability should be denied.  See 28 U.S.C.

§ 2253(c)(2).

**SCHEDULING ORDER**

The Findings and Recommendation will be referred to a district judge.  Objections, if any, are due June 11, 2010.  If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due June 28, 2010. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.

DATED this  21st  day of May, 2010.


/s/ Dennis James Hubel
Dennis J. Hubel
United States Magistrate Judge